J-S75031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IRENE DOUGLAS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSA BERNUDEZ AND OLGA | : | |
| BERNUDEZ | : | No. 1556 EDA 2018 |

Appeal from the Order Entered April 23, 2018
in the Court of Common Pleas of Wayne County
Civil Division at No(s): 2017-00014

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:       **FILED JANUARY 23, 2019**

In this negligence action, Irene Douglas ("Douglas") appeals from the Order granting summary judgment against her, and in favor of Rosa Bernudez ("Rosa") and Olga Bernudez ("Olga") (collectively, the "Defendants"). We reverse and remand for further proceedings.

Douglas alleged in her Complaint that, between February 2007 and December 2015, she resided in an apartment (hereinafter "the Property"), located in Honesdale, Wayne County. The Property was owned by Olga, and managed by Olga's daughter, Rosa. Douglas alleged that the Property contained mold, which had caused her to suffer health issues, and that the Defendants were negligent in failing to remove the mold.

In March 2015, Douglas requested the Wayne County Housing Authority ("Housing Authority") to conduct an inspection of the Property for mold.

According to Douglas, "[o]n or about September 22, 2015, [she] developed asthma from allergies due to mold in the [Property]."  Complaint, 1/9/17, at 3.  Douglas alleged that on September 25, 2015, she was rushed to the emergency room for treatment for what she alleged was a reaction to mold in the Property.  In support of this claim, Douglas attached to her Complaint a hand-written, two-sentence note, dated September 25, 2015 (hereinafter, the "September Note"), from her treating physician, Linda Mendelsohn, M.D. ("Dr. Mendelsohn").  In the September Note, Dr. Mendelsohn stated that Douglas "had a slightly elevated troponin level at an Emergency Room visit and an EKG showing poor R-wave progression.  This may be indicative of a small myocardial infarction."  Complaint, 1/9/17, at Exhibit F.

Douglas pled that on December 9, 2015, she was again hospitalized for health complications attributable to her exposure to mold in the Property.  In support of this claim, Douglas attached to her Complaint a second note from Dr. Mendelsohn, dated December 9, 2015 (hereinafter, the "December Note"), which was hand-written on a prescription pad.  The December Note states as follows:  "Irene Douglas was hospitalized for a subendocardial myocardial infarction caused by severe allergy to mold in her apartment."  Complaint, 1/9/17, at Exhibit H.[1]

---

[1] We will hereinafter refer to the September Note and December Note collectively as "the Notes."

In the meantime, the Housing Authority conducted an inspection of the Property in October 2015. Douglas attached to her Complaint a copy of a letter that the Housing Authority had sent to the Defendants following this inspection, requiring them to make certain repairs to the Property. The Housing Authority conducted another inspection of the Property on November 13, 2015, and notified the Defendants that the Property contained mold that still had to be removed.

On November 11, 2015, Rose M. Roberts ("Roberts"), a "mold assessor" certified by the "National Organization of Remediators and Mold Inspectors" ("NORMI"), conducted a "mold inspection" of the Property. Roberts issued a written report (hereinafter, the "NORMI Report"), which Douglas appended to her Complaint, noting the presence of mold in the Property and the need for mitigation. *See* Complaint, 1/9/17, at Exhibit G.

On May 16, 2017, the Defendants filed an Answer and New Matter, denying any negligence on their part. On January 12, 2018, Defendants filed a Motion for Summary Judgment, asserting, *inter alia*, that they were entitled to judgment as a matter of law because Douglas had failed to present sufficient expert medical evidence that the alleged mold in the Property proximately caused her health problems.

On March 21, 2018, Douglas filed an Answer and Brief in Opposition to Defendants' Motion for Summary Judgment (hereinafter, the "Answer"). Douglas asserted therein, in relevant part, that she had presented sufficient

expert evidence (*i.e.*, in the form of the Notes and the NORMI Report) to establish causation and liability. Additionally, Douglas appended to the Answer a transcript from a deposition of Rosa (hereinafter "Exhibit A"). **See** Answer, 3/21/18, at ¶ 42 (citing Exhibit A and asserting that the Defendants are "responsible for the hazardous mold, which was admitted by [Defendants] when Rosa [] tried to clean/remove the same in October[] 2015, resulting in a fire ….").

By an Opinion and Order entered on April 23, 2018, the trial court granted the Defendants' Motion for Summary Judgment. Relevant to the instant appeal, the trial court concluded that the September Note was "inadmissible as expert medical evidence that mold in [the Property] proximately caused [Douglas's] alleged injuries[,]" stating as follows:

> The [September] [N]ote … states[,] "Irene Douglas had a slightly elevated troponin level at an Emergency Room visit and an EKG showing poor R–wave progression. This **may** be indicative of a small myocardial infarction." Pl.'s Ex. "B" (emphasis added). As the term "may" was used[,] as opposed to language which would conclusively describe both the cause of and [description of Douglas's] injury, this expert opinion fails to demonstrate a reasonable degree of medical certainty.

Trial Court Opinion and Order, 4/23/18, at 7 (citing, *inter alia*, **Montgomery v. South Philadelphia Medical Group, Inc.**, 656 A.2d 1385, 1390 (Pa. Super. 1995) (stating that, to be admissible, the opinion of an expert witness must be rendered within a reasonable degree of medical certainty)). Regarding the December Note, the trial court stated as follows:

> [The December] [N]ote … states[,] "Irene Douglas was hospitalized for a subendocardial myocardial infarction caused by severe allergy to mold in her apartment," signed J. Mendelsohn. Pl.'s Ex. "I." While this language appears conclusive, [Douglas] produced no additional evidence to show that the expert's reasoning was based on a verifiable factual predicate. An opinion that the plaintiff's injuries stemmed from the cause alleged is inadmissible if it lacks an adequate basis in fact warranted by the record. **Collins** [**v. Hand**], 246 A.2d [398,] 404 [(Pa. 1968)]. As this expert opinion contains no adequate basis in fact warranted by the record, [Douglas] failed to meet her burden. Therefore, as [Douglas] produced no admissible expert opinion to prove that exposure to mold as a result of Defendants' actions either proximately or directly caused her health issues, [Douglas's] claim fails as a matter of law.

Trial Court Opinion and Order, 4/23/18, at 7-8.

Douglas timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal. The trial court then issued a Rule 1925(a) Opinion, relying upon the rationale advanced in the April 23, 2018 Opinion and Order.

Douglas now presents the following issues for our review:

1. Did the trial court abuse [its] discretion in finding [that Douglas's] medical report lacked an adequate basis in fact warranted by the record when the record shows mold in [the Property,] … where the mold was confirmed by photographs and inspection reports of the [] Housing Authority; plus an inspection report from NO[]R[MI]; and also confirmed by both [Douglas's] Depositions and … Rosa['s] [] deposition testimony?

2. Did the trial court fail to follow the rule that all facts of record and reasonable inference[s] therefrom must be read in a light most favorable to the [p]laintiff, and that the Defendants['] Motion for Summary Judgment can be granted only when the right to such judgment is clear and free from doubt?

- 5 -

3. Did the trial court err in granting Defendants['] [] Summary Judgment Motion by determining [that Douglas's] medical expert report was inadmissible?

Brief for Appellant at 1 (issues renumbered, some capitalization omitted).

Our standard of review of an order granting a motion for summary judgment is well settled:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.  Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear:  The trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Daley v. A.W. Chesterton, Inc.***, 37 A.3d 1175, 1179 (Pa. 2012) (citation omitted); ***see also Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (stating that "the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*.  This means we need not defer to the determinations made by the lower tribunals." (citations omitted)).

We will address Douglas's issues simultaneously due to their relatedness.  Douglas argues that the trial court erred in entering summary judgment against her, where she presented sufficient evidence in her Complaint and Answer to establish a *prima facie* negligence case against the Defendants.  ***See*** Brief for Appellant at 10-14.  Specifically, Douglas contends that

> [t]aken as a whole, and read in its best light, the evidence from the [NORMI R]eport findings, verified by [Douglas's] photos [of the Property] and her [deposition] testimony; the inspection report of the … Housing Authority, with a Remediation Order to [] Defendants to remove the mold; and … Rosa['s] [] testimony confirming her viewing the mold and her remedial actions, provides more than enough facts to prove a basis for Dr. Mendelsohn's medical report [(*i.e.*, the Notes)], and to deny the Summary Judgment Motion.

*Id.* at 11. Douglas urges that, where the Complaint contained the Notes, the trial court erred in finding that the record contains insufficient evidence as to causation. *Id.* at 7, 13; *see also Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 596 (Pa. 2012) (stating that a plaintiff alleging a negligence claim bears the burden of "demonstrat[ing] the causal connection between the breach of a duty of care and the harm alleged: that the increased risk was a substantial factor in bringing about the resultant harm."); *Lattanze v. Silverstrini*, 448 A.2d 605, 608 (Pa. Super. 1982) (stating that, generally, an injured plaintiff in a negligence action must prove the element of causation through expert medical testimony). Douglas further argues that the trial court committed legal error in ruling that the December Note was inadmissible. Brief for Appellant 7 (citing Trial Court Opinion and Order, 4/23/18, at 8 (wherein the trial court, relying upon *Collins*, *supra*, stated that Dr. Mendelsohn's "expert opinion[, *i.e.*, in the December Note,] contains no adequate basis in fact warranted by the record[.]")).

Where Dr. Mendelsohn conclusively stated in the December Note that "Douglas was hospitalized for a subendocardial myocardial infarction *caused*

*by severe allergy to mold in her apartment*" Complaint, 1/9/17, at Exhibit H (emphasis added), we cannot agree with the trial court's determination that Douglas failed to present sufficient evidence as to causation.[2] Further, viewing the totality of the evidence in the light most favorable to Douglas, we conclude that the trial court erred in determining that the December Note lacks an adequate basis in fact warranted by the record; thus, **Collins** is inapposite. Moreover, it cannot be said that the December Note was based upon guess or speculation. **See First v. Zem Zem Temple**, 686 A.2d 18, 21 (Pa. Super. 1996) (stating that "[a]lthough it is clear that a jury is not permitted to reach a verdict based upon guess or speculation, it is equally clear that a jury may draw inferences from all of the evidence presented. … A substantial part of the right to trial by jury is taken away when judges withdraw close cases from the jury." (citation omitted)). Accordingly, we conclude that the language in the December Note, along with the other evidence of mold in the Property, presents a disputed issue of fact for a jury to resolve, and the trial court thus erred in entering summary judgment against Douglas.

Order reversed; case remanded for further proceedings consistent with this Memorandum; jurisdiction relinquished.

---

[2] Additionally, unlike the September Note, Dr. Mendelsohn's opinion in the December Note as to causation was rendered with a sufficient degree of medical certainty. **Cf. Montgomery**, **supra**.

- 8 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/19